# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| ELIZABETH MORGAN TODD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18-cv-01513-LSC |
| | ) | |
| PFIZER INC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF OPINION AND ORDER

Plaintiff Elizabeth Morgan Todd ("Todd") brings this products liability action against Defendant Pfizer Inc. ("Pfizer"), alleging that Pfizer's drug Lyrica caused her to suffer permanent cognitive impairments. Before the Court is Pfizer's second motion to dismiss. (Doc. 19.) Todd has timely filed her opposition. The motion is fully briefed and ripe for review. For the reasons stated below, Pfizer's motion (doc. 10) is due to be granted in part and denied in part.

## I.   BACKGROUND

### a.   RELEVANT FACTS[1]

In 2008, Todd was prescribed the drug Lyrica by her physician. Defendant Pfizer produces and sells Lyrica. Lyrica is a prescription drug designed to treat pain associated with fibromyalgia. Since being on a regular regiment of Lyrica, Todd alleges that she has suffered a steady and significant cognitive decline including early onset dementia as a result of her long-term use of Lyrica. Todd alleges that Pfizer was aware of such side effects, but nevertheless manufactured and sold Lyrica without providing a warning regarding these side effects. As a result of her cognitive decline, Todd has had to leave her job as a nurse and is now dependent on a caregiver.

### b.   PROCEDURAL HISTORY

Todd originally filed this action on September 17, 2018 in the Eastern Division of the Northern District of Alabama. (Doc. 1.) Pfizer moved to dismiss the initial complaint on October 29, 2018, arguing that Todd's claims were either federally preempted or inadequately pleaded under FED. R. CIV. P. 8 and 9. (Doc. 10.) Due to

---

[1] In evaluating a motion to dismiss, the Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The following facts are, therefore, taken from Todd's allegations contained in her complaint, and the Court makes no ruling on their veracity.

a recusal by the then-presiding district judge, the action was transferred to this Court on January 17, 2019. (Doc. 16.)

On May 29, 2019, this Court entered a Memorandum of Opinion and Order granting Pfizer's motion to dismiss in part. (Doc. 17.) The Court found that (1) Todd's claims arising from a failure to warn were adequately pleaded under Rule 8 but were—as then pleaded—preempted under federal law; (2) her claims arising from a design defect, though not clearly preempted under federal law, were not viable as pleaded under Alabama law; and (3) her remaining claims for fraud, breach of warranty, and violation of consumer protection laws did not conform with federal pleading standards. The Court dismissed all of Todd's claims without prejudice and granted her request to amend her complaint in conformance with the Court's findings.

As permitted, Todd timely filed her First Amended Complaint ("FAC"), purporting to address the deficiencies in her initial complaint. (Doc. 18.) Pfizer then filed a second motion to dismiss, seeking dismissal of all Todd's claims with prejudice. (Doc. 19.) In filing her response, Todd has not requested leave to amend any defects that the Court finds in her FAC. (*See* Doc. 21.)

## II.   STANDARD

In general, a pleading must include "a short and plain statement of the claim

showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). However, to withstand a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the

complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

## III.   DISCUSSION

As in her initial complaint, Todd brings claims against Pfizer for (1) negligence; (2) violations of the Alabama Extended Manufacturers' Liability Doctrine (AEMLD); (3) breach of express warranty; (4) breach of implied warranties; (5) fraudulent misrepresentation; (6) fraudulent concealment; (7) negligent misrepresentation; (8) fraud and deceit; (9) violation of consumer protection laws; (10) negligence – failure-to-warn; and (11) negligence – negligent design. Todd's claims may essentially be characterized as claims alleging that Pfizer failed to warn her about the dangers of Lyrica and claims alleging that Pfizer improperly designed Lyrica. Pfizer argues that Todd's FAC fails to address any of the deficiencies found in her original complaint, including those arising from federal preemption and federal pleading standards.

The Court will address each type of claim in turn.

### a. TODD'S FAILURE TO WARN CLAIMS

Pfizer argues that Todd's claims based on a failure to warn are due to be dismissed due to federal preemption. Although state law may impose duties regarding warnings and drug safety, federal law imposes a set of more complex drug labeling and safety requirements. *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 612 (2011); *Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472, 477 (2013). Before marketing and producing a drug in interstate commerce, a drug manufacturer is required to gain the approval of the Food and Drug Administration ("FDA"). *See* 21 U.S.C. § 355. As part of this pre-market approval, the FDA must approve of the chemical composition of the drug. *Bartlett*, 570 U.S. at 477. In addition to approving the contents of the drug, the FDA must approve the drug's proposed label. *See* 21 U.S.C. § 355; 21 C.F.R. 201.57(a). Where state law would require a different label or design and therefore conflict with federal law, compliance is impossible and state law is preempted. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995); *Bartlett*, 573 U.S. at 490. Ultimately, "[t]he question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it." *PLIVA, Inc.*, 564 U.S. at 620; W*yeth v. Levine,* 555 U.S. 555, 573 (2009).

Although "a manufacturer may [generally] only change a drug label after the FDA approves a supplemental application," *Wyeth*, 555 U.S. at 568, manufacturers

of name brand drugs may in certain instances make unilateral changes to the label of its drug under the "changes being effected" ("CBE") regulation in order to "add or strengthen a contraindication, warning, precaution, or adverse reaction" on the label of its drug without waiting for FDA approval due to "newly acquired information" regarding "evidence of a causal association." 21 C.F.R. § 314.70(c)(6)(iii)(A).[2] A plaintiff can thus avoid preemption by demonstrating the existence of newly acquired information that would have allowed a defendant "to modify [the drug's] label after its approval and before [the plaintiff's] injury," thereby satisfying both its federal and state-law duties to maintain accurate warning labels. *McGee v. Boehringer Ingelheim Pharm., Inc.*, No. 4:16-cv-2082-KOB, 2018 WL 1399237, at *4 (N.D. Ala. Mar. 20, 2018).

In granting Pfizer's earlier motion to dismiss in part, this Court found that Todd's initial complaint did not "contain sufficient factual allegations to plausibly indicate that newly acquired information became available to Pfizer such that Pfizer could or should have changed its warning label through the CBE process." (Doc. 17

---

[2]    Because the CBE regulation permits a manufacturer of a brand name drug to strengthen its warning before receiving FDA approval, "the mere fact that the FDA approved [the drug in question's] label does not establish that it would have prohibited such a change." *Wyeth*, 555 U.S. at 573. To show that the FDA would have prohibited such a change, a defendant must show "clear evidence" that it fully informed the FDA and that the FDA in turn informed the manufacturer that it would not approve such a change. *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1672 (2019).

at 6.) In her initial complaint, Todd alleged that Pfizer knew of certain scientific studies that revealed a causal link between Lyrica and severe health issues. (Doc. 1 at ¶ 35.) However, the Court noted that these allegations "fail[ed] to include facts indicating that these studies represented newly acquired information such that Pfizer would have been able to change its labels through the CBE process." (Doc. 17 at 6.)

Todd now claims to have addressed these issues in her FAC, making clearer that Pfizer had access to new information mandating label changes through the CBE process. (Doc. 21 at 7.) Upon examination of the FAC, the Court finds that she has now adequately made such allegations. Specifically, her FAC now expressly alleges that the "FDA was not aware of [the] studies and the information revealed from them when the original label was approved." (Doc. 18 at ¶ 39.) This allegation, taken as true, establishes that the studies referenced in the FAC constitute "newly acquired information" for the purposes of making unilateral label changes through the CBE process. As a result, Todd has addressed the issues raised by this Court's prior Order and has now pleaded a failure-to-warn claim that is not preempted by federal law.

Pfizer's arguments to the contrary are unavailing. Specifically, it argues that Todd "has not alleged 'newly-available data that [Pfizer] had or should have had after [Lyrica's] approval *and before* [her] injury.'" (Doc. 19 at 5) (quoting *See McGee*,

2018 WL 1399237, at \*4–\*5 (emphasis added)). To be sure, Todd does not expressly allege *when* Pfizer knew of these studies. Indeed, apart from alleging that the studies were not before the FDA when it approved the labeling, she does not allege any further facts about the timing of these studies or that these studies were available to Pfizer prior to her alleged injury.[3] However, the FAC does allege that

> Defendant through its affirmative misrepresentations and omissions actively concealed from Mrs. Todd and her prescribing physicians the true and significant risks associated with Lyrica use. Had the prescribing physicians been adequately warned, provided true, complete and accurate information regarding Lyrica, they would not have prescribed Lyrica to Mrs. Todd. Defendant failed to modify or update its label or warnings through the CBE process despite having the newly acquired information highlighted above.

(Doc. 18 at ¶ 49.) This allegation draws a clear connection between Todd's injury—which followed the affirmative misrepresentations and omissions—and Pfizer's acquisition of the new studies—which preceded the affirmative misrepresentations and omissions. Taken as true, it allows for the reasonable inference that Pfizer had access to the new studies at some point prior to Todd's injury.

Accordingly, Pfizer's motion to dismiss Todd's amended failure-to-warn

---

[3]     Todd FAC admittedly provides the date for one of the three studies to which she refers. (Doc. 18 at ¶ 10) (providing a publication date of October 2009, a year after Todd first began taking Lyrica in 2008). However, the FAC indicates that this study concerned the effects of a drug called "Gabapentin." (*Id.*) The FAC fails to indicate whether Lyrica and Gabapentin are the same drug. Further, it does not indicate that the two are so similar that a study concerning the effects of the latter is applicable to the former. As a result, the study of Gabapentin's effects is inapposite at this time.

claims is due to be denied.

### b. TODD'S DESIGN DEFECT CLAIMS

In its motion to dismiss, Pfizer again argues that Todd's design defect claims are preempted by federal law. This Court previously noted in its Order granting dismissal in part that it was unclear from the pleadings whether federal preemption extends to Todd's design defect claims. (Doc. 17 at 7.) However, the Court need not reach that constitutional question here because Todd's design defect claims still conflict with Alabama law. *See Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1328 (11th Cir. 2017) (noting that a court should "analyze whether each claim can stand under state law, and only then decide the preemption questions where necessary").

Under Alabama law, prescription drugs are considered "unavoidably unsafe" and accordingly are considered "defective only when not accompanied by an adequate warning." *Tatum v. Schering Corp.*, 795 F.2d 925, 926 (11th Cir. 1986) (discussing Alabama law); *see Stone v. Smith, Kline & French Labs.*, 447 So. 2d 1301, 1304 (Ala. 1984) ("[I]n the case of an 'unavoidably unsafe' yet properly prepared prescription drug, the adequacy of the accompanying warning determines whether the drug, as marketed, is defective, or unreasonably dangerous."). Consequently, under Alabama law, Todd's design defect claims are in all actuality part of her failure-to-warn claims and not separate claims. *See e.g., Barcal v. EMD Serono*, Inc.,

No. 5:14-cv-01709-MHH, 2016 WL 1086028, at *3 (N.D. Ala. March 21, 2016).

Accordingly, such claims are due to be dismissed.

In its previous Order granting dismissal in part, this Court instructed Todd to "re-plead her design defects in accordance with Alabama law." (Doc. 17 at 8.)[4] However, examination of Todd's FAC reveals no attempt by her to re-plead her design defect claims as ordered by this Court. Accordingly, Todd's design defect claims are now due to be dismissed with prejudice.

### c. TODD'S FRAUD CLAIMS

Todd asserts several causes of action involving fraudulent behavior by Pfizer. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). This heightened pleading standard requires the plaintiff "to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Specifically, the complaint must contain

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making it; (3) the content of such statements and the manner in which they misled the

---

[4] The Court also instructed Todd to re-plead her design defects claims to cure any potential issues with federal preemption. (Doc. 17 at 8.) However, as noted above, the Court need not reach that issue here where Todd's design defect claims are not viable under Alabama law.

plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*Id.* (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)).

In dismissing Todd's fraud claims without prejudice, this Court previously noted that her initial complaint did not allege fraud with particularity. Specifically, it found that the initial complaint "[did] not provide sufficient factual allegations regarding the alleged misrepresentations, including but not limited to facts regarding the substance of the actual alleged misrepresentations or omissions and the time or place of these misrepresentations." (Doc. 17 at 9.)

Examination of the FAC confirms that Todd has corrected the deficiencies raised in this Court's prior Order. As Todd notes in her response, the FAC "identifies more specific information concerning [Pfizer's] knowledge, how the label was insufficient, and what process [Pfizer] avoided to keep a less accurate but more positive label on its highly profitable drug." (Doc. 21 at 13.) This new information provides greater detail of the content of Pfizer's alleged falsehoods. Todd has made several allegations as to how Pfizer represented that Lyrica had "been tested and was found to be safe and/or effective for fibromyalgia." (*See, e.g.*, Doc. 18 at ¶ 115.) She asserts that Pfizer represented that Lyrica was safe through "reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media." (Doc. 21 at ¶ 149.) She further asserts that Lyrica

came with a warning label that failed to warn of all known dangers associated with the product. (*Id.* at ¶ 6.) The FAC's reference to Lyrica's severe impacts on cognitive ability shows what information Pfizer omitted in its alleged statements. (*Id.* at ¶ 35.) Further, the FAC alleges that Pfizer made such misstatements and omissions at all times during the course of dealing between the two parties. (*Id.* at ¶ 127.) Finally, the FAC indicates that Todd and her physicians relied upon such misstatements and omissions, allowing Pfizer to profit from further sales. (*See id.* at ¶¶ 27, 46.)

These allegations, taken as true and read in the light most favorable to Todd, satisfy Rule 9(b) and provide sufficient notice to Pfizer of Todd's fraud claims against it. *See Houston v. Bayer Healthcare Pharm., Inc.*, 16 F. Supp. 3d 1341, 1349–50 (N.D. Ala. 2014) (finding Rule 9(b) satisfied where the plaintiff alleged that she and her physicians relied upon an inaccurate warning label that came with a dangerous birth control device). Accordingly, Pfizer's motion to dismiss Todd's fraud claims is due to be denied.

### d. TODD'S WARRANTY CLAIMS

The Court now turns to Todd's warranty claims. In the Order dismissing those claims without prejudice, the Court found that the initial complaint "fail[ed] to provide information regarding the scope of the warranties alleged to have been made

by Pfizer." (Doc. 17 at 10.) As a result, the Court directed Todd to provide additional factual allegations to cure that defect. (*See id.*)

Todd has not amended her warranty claims as instructed in the Court's previous Order.[5] Nor does she provide any new argument in her response to Pfizer's latest motion to dismiss (doc. 21 at 14–16); rather, she rehashes arguments from her response to Pfizer's previous motion (doc. 14 at 16–19). Indeed, apart from a passing reference in her response, Todd does not acknowledge that the Court intended for her to provide greater detail in her FAC. (Doc. 21 at 7.) With that failure in mind, the Court will still examine each of Todd's warranty claims to determine whether she has adequately pleaded any of them.

Upon further examination, the Court finds that Todd has adequately pleaded a claim for breach of express warranty. The Alabama Commercial Code provides that an express warranty is created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," Ala. Code (1975) § 7-2-313(1)(a), or by "[a]ny description of the goods

---

[5]     Examination of Todd's FAC reveals the addition of a single, unrelated allegation in the Express Warranty section. (Doc. 18 at ¶ 100) ("Defendant acquired new information as outlined above but failed to amend its label despite the new information. Amendment of the label was Defendant's responsibility and they had the ability to do so but failed to because of fear that the financial loss once the public users and treating physicians learned of his likelihood to cause permanent cognitive impairment.").

which is made part of the basis of the bargain," Ala. Code (1975) § 7-2-313(1)(b).

Todd relies upon the decision in *Houston*, 16 F. Supp. 3d at 1341, to argue that she has alleged sufficient facts to state an express warranty claim. In *Houston*, an intrauterine birth control device user brought an express warranty claim against the device manufacturer. *Id.* at 1349. Her complaint alleged that the device was expressly warranted to be "safe . . . for [her] and members of the public generally." *Id.* She further alleged that she had relied upon those representations in choosing to use the device and that the device was "not safe or effective" and this it could produce significant health issues. *Id.* Taking those allegations to be true, the court concluded that the plaintiff had stated a plausible claim for breach of express warranty. *Id.*

The facts here are analogous to those in *Houston*. As in *Houston*, Todd has alleged that Pfizer expressly warranted to her and her physicians that the drug Lyrica is "safe and well accepted by users." (Doc. 21 at ¶ 92.) Furthermore, Todd has alleged that she relied upon that representation and that the product failed to perform as safely as promised. (*Id.* at ¶¶ 95–96.) To be sure, the Court is hesitant to conclude that alleging only a promise that a product is "safe" sufficiently defines the scope of an expressed warranty. However, the allegations in Todd's FAC go even further than those seen in *Houston*: she also alleges that "[Pfizer] expressly represented to Mrs. Todd . . . that [Lyrica] did not produce any dangerous side

effects in excess of those risks associated with other forms of treatment for fibromyalgia, that the side effects it did produce were accurately reflected in the warnings and that it was adequately tested and fit for its intended use." (*Id.* at ¶ 99.) These allegations, taken as true, sufficiently define the scope of the express warranty that Pfizer allegedly made to Todd and her physicians.

Moving forward, the burden will be on Todd to show the exact manner in which Pfizer made such representations. For now, Todd has adequately pleaded a claim of breach of express warranty under Alabama law.

The same cannot be said of Todd's implied warranty claims. Todd's FAC appears to bring two types of implied warranty claims. First, she alleges that Pfizer breached an implied warranty of fitness for a particular purpose. (*Id.* at ¶ 108) ("Mrs. Todd . . . did rely on said implied warranty . . . of fitness for a particular purpose."). Second, she alleges that Pfizer breached an implied warranty of merchantability. (*Id.* at ¶ 106) (alleging that Pfizer represented that "Lyrica was safe and of merchantable quality and fit for the ordinary purpose for which said product was to be used"). Both claims must fail as pleaded.

As an initial matter, Todd has not properly alleged the breach of an implied warranty of fitness for a particular purpose. To state such a claim in Alabama, the plaintiff must plead that (1) the buyer had a particular purpose for which the goods

were required, (2) the seller, at the time of contracting, had reason to know of the buyer's particular purpose, and (3) the seller, at the time of contracting, had reason to know that the buyer was relying on the seller's skill or judgment to select or furnish suitable goods. *See* Ala. Code (1975) § 7-2-315. The Official Comments for this code section define a "particular purpose" as involving a "specific use by the buyer which is peculiar to the nature of his business." Ala. Code (1975) § 7-2-315, cmt 2. Thus, this cause of action does not involve "uses which are customarily made of the goods in question." *Id.* Here, Todd's FAC does not allege that she intended to make specialized use of Lyrica that differed from the ordinary usage of the drug. Therefore, she has not adequately pleaded a claim for breach of an implied warranty of fitness for a particular purpose.

Finally, upon examination of Todd's implied warranty of merchantability claim, the Court finds that Todd has not sufficiently alleged that the scope of this warranty extends to the injury she suffered. In Alabama, an implied warranty of merchantability of goods arises "in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ala. Code (1975) § 7-2-314(1). To be merchantable, the goods "must be at least . . . fit for the ordinary purposes for which such goods are used." Ala. Code (1975) § 7-2-314(2)(c).

The Alabama Supreme Court has held that "a claim alleging breach of an

implied warranty of merchantability is separate and distinct from an AEMLD claim and is viable to redress an injury caused by an unreasonably dangerous product." *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 111 (Ala. 2003) (answering a question certified by the Eleventh Circuit); *see also* 363 F.3d 1183, 1198 (11th Cir. 2004) (applying that answer to hold that a claim based on the health effects of cigarettes could not be dismissed under Alabama law merely because the cigarettes served their ordinary function of allowing the user to smoke).

However, at least one court in this District has convincingly found that, even where a health product causes injury when consumed or otherwise placed within the user's body, the implied warranty of merchantability is not breached so long as that product serves a purpose apart from consumption. *Houston*, 16 F. Supp. 3d at 1346–47 (citing *Spain*, 872 So. 2d at 111; *Allen v. Delchamps, Inc.*, 624 So. 2d 1065, 1066–67 (Ala. 1993); *Shell v. Union Oil Co.*, 489 So. 2d 569, 572 (Ala. 1986)). In *Houston*, the plaintiff alleged that a pregnancy prevention device was so dangerous as to be unmerchantable where its use was linked to development of a condition called "pseudotumor cerebri." *Id.* at 1343–44. The device itself allowed "treatment of heavy menstrual bleeding in women who choose to use intrauterine contraception as their method of contraception." *Id.* at 1347. Although allegedly dangerous, there was no indication that the device failed to serve its primary purpose.

The court in *Houston* found that the ill effects of the device did not breach the implied warranty of merchantability. The court relied upon *Shell*, 624 So. 2d at 572, where the Alabama Supreme Court held that the U.C.C.'s warranty for commercial fitness does not mandate sellers to ensure the user's safety provided that the product serves its commercial purpose. *Houston*, 16 F. Supp. at 1346. It also distinguished the contrary holdings in *Spain Park* and *Delchamps* as involving products that had no purpose apart from consumption. *Id.* (citing *Spain Park*, 872 So. 2d at 111 (cigarettes); *Delchamps*, 624 So. 2d at 1066–67 (food products)). Because the device in *Houston* had "a clear function other than consumption," and because there was no indication that it failed to achieve that function, the court granted the defendant's motion to dismiss the plaintiff's implied warranty of merchantability claim. *Id.*

The holding in *Houston* is instructive in the instant case. Here, Todd alleges that Lyrica causes severe health issues after prolonged use by patients. The ordinary purpose of Lyrica, according to Todd's complaint, is to treat fibromyalgia. Thus, as in *Houston*, the instant case involves a product, the ordinary purpose of which goes beyond mere consumption by the user.

Unless Lyrica also failed in its ordinary purpose of treating fibromyalgia, Todd cannot state a viable claim for breach of an implied warranty of merchantability. However, Todd's FAC does not allege that Lyrica was ineffective in treating fibromyalgia; she instead alleges only the severe health issues that result.

It is entirely possible that such side-effects indicate a failure to treat the symptoms of fibromyalgia, but the FAC does not provide enough information from which the Court could reasonably make such an inference. As pleaded, the FAC does not indicate that the scope of the implied warranty is broad enough to encompass the injuries that Todd has suffered. The FAC thus fails to state a claim for breach of an implied warranty of merchantability.

Accordingly, although Todd's claim for breach of express warranty survives, her implied warranty claims are both due to be dismissed. The Court notes that Todd has neither requested leave to amend her complaint nor made any attempt to replead her implied warranty claims to correct the errors raised in this Court's prior Order. The Court will therefore dismiss her implied warranty claims with prejudice.

### e. TODD'S CONSUMER PROTECTION CLAIM

Finally, Todd has once again failed to allege facts sufficient to state a plausible claim under consumer protection laws. This Court previously directed her to "amend her complaint to further allege the legal basis for such claims." (Doc. 17 at 10.) In her FAC, Todd alleges that Pfizer "violated consumer protection laws through their use of false and misleading misrepresentations or omissions of material fact relating to the safety of Lyrica." (Doc. 18 at ¶ 181.) However, her FAC still does not cite any specific consumer protection law alleged to have been violated by Pfizer's conduct. Without any hint of the legal basis for her claim, the Court cannot address the

plausibility of this claim.

Because Todd has made no effort to address the deficiencies in this claim as instructed by the Court, her claim under the consumer protection laws is due to be dismissed with prejudice.

## IV. CONCLUSION

For the reasons stated above, Pfizer's motion to dismiss (doc. 19) is GRANTED IN PART and DENIED IN PART. Todd's claims for AEMLD (insofar as this claim is based on defective design), negligent design, breach of implied warranties, and violation of consumer protection laws are DISMISSED WITH PREJUDICE. All other claims remain pending.

Finally, the parties have failed to submit a Report of Parties' Planning meeting within the deadlines set forth by the Federal Rules of Civil Procedure and this Court's Uniform Initial Order. The parties are hereby ORDERED to immediately meet and confer and to file a Report of Parties' Planning Meeting with the Court within twenty-one (21) days from the date of this Order. Failure to submit a timely report as ordered may result in dismissal of this action.

**DONE** and **ORDERED** on December 18, 2019.

L. Scott Coogler
United States District Judge

199455